*E-FILED - 8/2/10*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAPRINA LANISE FLETCHER,

    Petitioner,

 vs.

KENT EICHENBERGER, Acting Warden,

    Respondent.

No. C 08-2774  RMW (PR)

ORDER DENYING PETITION
FOR WRIT OF HABEAS CORPUS;
DENYING CERTIFICATE OF
APPEALABILITY

Petitioner, a California prisoner proceeding pro se, filed a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The court ordered respondent to show cause why the petition should not be granted. Respondent filed an answer and a supporting memorandum of points and authorities addressing the merits of the petition. Although given an opportunity, petitioner did not file a traverse. Having reviewed the papers and the underlying record, the court concludes that petitioner is not entitled to habeas corpus relief and will deny the petition.

**FACTUAL BACKGROUND**

As the only claim before the court involves the jury selection process, a detailed description of the facts is unnecessary. Essentially, the evidence is that petitioner approached

Order Denying Petition for Writ of Habeas Corpus; Denying Certificate of Appealability
P:\PRO-SE\SJ.Rmw\HC.08\Fletcher774denyhc.wpd

the victim as she entered her car and compelled the victim to hand over her bag at gun-point. (Resp., Ex. 2B at 93-94, 114-117.)  Petitioner and her co-defendant then fled the scene. (Id. at 97.)

A Contra Costa County Superior Court jury convicted petitioner of second degree robbery and being a felon in possession of a concealed firearm. (Resp., Ex. 4 at 1.) The jury also found true allegations that the petitioner had personally used a firearm in the commission of the robbery. (Id.) The trial court sentenced petitioner to 13 years in state prison. (Id.)

Petitioner appealed the judgment. On April 26, 2007, the California Court of Appeal affirmed the judgment and on July 11, 2007 the California Supreme Court denied review. Petitioner filed the instant federal action on June 4, 2008.

## DISCUSSION

**A.     Standard of Review**

Because the instant petition was filed after April 24, 1996, it is governed by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA), which imposes significant restrictions on the scope of federal habeas corpus proceedings. Under the AEDPA, a federal court may not grant habeas relief with respect to a state court proceeding unless the state court's ruling was "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams (Terry) v. Taylor, 529 U.S. 362, 412-13 (2000). "Under the 'unreasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. "[A] federal habeas court may not

issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411.

"[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was 'objectively unreasonable.'" Id. at 409. In examining whether the state court decision was objectively unreasonable, the inquiry may require analysis of the state court's method as well as its result. Nunes v. Mueller, 350 F.3d 1045, 1054 (9th Cir. 2003). The "objectively unreasonable" standard does not equate to "clear error" because "[t]hese two standards . . . are not the same. The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness." Lockyer v. Andrade, 538 U.S. 63, 75 (2003).

A federal habeas court may grant the writ if it concludes that the state court's adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The court must presume correct any determination of a factual issue made by a state court unless the petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

**B.   Petitioner's Claim**

As grounds for federal habeas relief petitioner asserts that she was denied her constitutional right to equal protection, under the Sixth and Fourteenth Amendments, by the prosecutor's peremptory challenge of a prospective juror based on the juror's race.

Prospective juror Rosalind Bennett was one of four prospective African-American jurors. (Resp., Ex. 3B at 273.) In her juror questionnaire, Bennett indicated that she was a widow, had three children, aged 28, 20, and 19, and was employed as a caregiver. (Clerk's Transcript ("CT") at 166.) Brief questioning by the prosecutor revealed that Bennett had worked for the last 15 years as a caregiver for developmentally delayed persons. (Resp., Ex. 3A at 135.) During jury selection the prosecutor exercised the second of his peremptory challenges to

exclude Bennett. (Resp., Ex. 3B at 273.) Counsel for petitioner made a <u>Batson-Wheeler</u>[1] motion to challenge the use of the peremptory challenge as racially motivated. (<u>Id.</u> at 271.) He asserted that very little was known about Bennett and he could see no reason for the challenge other than that she was African-American. (<u>Id.</u>) The trial court ruled that petitioner had not established a prima facie case of discrimination and therefore did not require the prosecutor to articulate a nondiscriminatory motive for the challenge.[2] (<u>Id.</u> at 273.)

The Supreme Court has held that the Equal Protection Clause forbids the challenging of potential jurors solely on account of their race. <u>Batson</u>, 476 U.S. at 89. In California, a party who believes his opponent is using his peremptory challenges to strike jurors on grounds of group bias alone may raise the point by way of a timely motion. <u>See</u> <u>Wheeler</u>, 22 Cal. 3d at 280.

<u>Batson</u> permits prompt rulings on objections under a three step process. <u>Batson</u>, 476 U.S. at 93-94. First, the defendant must make out a prima facie case that the prosecutor exercised peremptory challenges on the basis of race "by showing that the totality of the relevant facts gives rise to an inference of discriminatory purpose." <u>Id.</u> Second, if the requisite showing has been made, the burden shifts to the prosecutor to articulate a race-neutral explanation for striking the jurors in question. <u>Id.</u> at 97. Finally, the trial court must determine whether the defendant has carried his burden of proving purposeful discrimination. <u>Id.</u> at 98. A party establishes a prima facie equal protection violation based on race by showing that: (1) the defendant is a member of a cognizable racial group, (2) the group's members have been excluded from the jury, and (3) the circumstances of the case raise an inference that the exclusion was based on race. <u>Id.</u> at 96.

---

[1] <u>Batson v. Kentucky</u>, 476 U.S. 79, 89 (1986); <u>People v. Wheeler</u>, 22 Cal. 3d 258, 280 (1978).

[2] The court gave the prosecutor an opportunity to articulate a reason for dismissing Bennett even though the prosecutor was not required to do so, the prosecutor declined. (Resp., Ex. 3B at 273.)

1   Here, the first and second elements of the prima facie case are met, because Bennett is
2   African-American and the prosecutor used a peremptory strike to exclude her. Id. at 96. Only
3   the third element of the prima facie case is at issue, that is, whether the circumstances of the case
4   raise an inference of discrimination. Id.

5   A defendant will satisfy the requirements of a Batson prima facie case by producing
6   evidence sufficient to permit the trial judge to draw an inference that discrimination has
7   occurred. Johnson v. California, 545 U.S. 162, 170 (2005). Where a state court has applied the
8   appropriate "raise an inference" standard, a state court's ruling on whether a criminal defendant
9   has established a prima facie case of prosecutorial discrimination is entitled to a "presumption of
10  correctness" on federal habeas review. See Tolbert v. Page, 182 F.3d 677, 685 (9th Cir. 1999)
11  (en banc). Unless something in the record vanquishes this presumption, a state court's decision
12  that the defendant did not establish a prima facie case of a discriminatory use of a peremptory
13  challenge must be upheld. See Tolbert v. Gomez, 190 F.3d 985, 989 (9th Cir. 1999).

14  Here, applying the correct standard, the California Court of Appeal affirmed the trial
15  court's determination that petitioner failed to make out a prima facie case that the prosecutor
16  excused Bennett on the basis of race. (Resp., Ex. 4 at 5.) The Court of Appeal emphasized that
17  there were three other African-Americans among the prospective jurors. (Id.) Furthermore, as
18  petitioner was only a few years older than Bennett's oldest child and worked as a caregiver there
19  were race-neutral reasons for the challenge. (Id.) The court explained that Bennett might
20  reasonably be expected to sympathize with persons about petitioner's age who were in trouble or
21  had made bad choices. (Id.)

22  When a defendant raises a plausible Batson claim, a court is obligated to consider the
23  context in which the challenge occurred. Boyd v. Newland, 467 F.3d 1139, 1146-47 (9th Cir.
24  2006). There are two main ways that a court may consider petitioner's claim in light of the
25  "totality of relevant facts." Id. at 1147. First, a court may compare the percentage of minority
26  prospective jurors stricken to non-minority prospective jurors stricken. Miller-El v. Dretke, 545
27  U.S. 231, 240 (2005). Second, a court may engage in a comparative juror analysis by
28

Order Denying Petition for Writ of Habeas Corpus; Denying Certificate of Appealability
P:\PRO-SE\SJ.Rmw\HC.08\Fletcher774denyhc.wpd

determining whether non-challenged jurors possessed any of the characteristics on which the prosecution challenged jurors in the protected group. Boyd, 467 F.3d at 1147-48.

Petitioner does not need to show that the prosecution has engaged in a pattern of discriminatory strikes because "the Constitution forbids striking even a single prospective juror for a discriminatory purpose." Id. at 1147. Nonetheless, courts have found it helpful to consider any relevant statistical disparity by comparing the number of minority prospective jurors stricken to non-minority prospective jurors stricken. Id. (citing Miller-El v. Dretke, 545 U.S. 231, 240 (2005)). A pattern of exclusion of minority venirepersons provides sufficient support for an inference of discrimination even if the prosecutor has not attempted to remove all members of that minority and even if a few members of the minority group remain on the jury empaneled. See, e.g., Williams v. Runnels, 432 F.3d 1102, 1109 (9th Cir. 2006) (prosecutor's use of three of his first four peremptory challenges to dismiss African-American jurors after initially accepting African-American members on the jury enough to establish prima facie inference of racial discrimination); Paulino v. Castro, 371 F.3d 1083, 1090-91 (9th Cir. 2004) (over 83% of possible black jurors stricken; five of six strikes used against black possible jurors). However, when reviewing a Batson claim a court must consider a statistical disparity in light of "any other relevant circumstances" that may refute an inference of discrimination. Williams, 432 F.3d at 1107 (quoting Johnson, 545 U.S. at 170).

Here, the record lacks any statistical disparity raising an inference of discriminatory intent. The prosecutor's challenge of prospective African American juror Bennett, without more, is insufficient to establish a prima facie case of discrimination. Wade v. Terhune, 202 F.3d 1190, 1198 (9th Cir. 2000) ("the fact that the juror was the one Black member of the venire does not, in itself, raise an inference of discrimination."). In all, the prosecution exercised nine peremptory challenges and only one was directed towards an African-American. (CT at 94.) At the time Bennett was excluded, there were three other prospective African-American jurors, all of whom were ultimately among the final twelve jurors. (Resp., Ex. 2B at 66, Ex. 3B at 273.) Thus, the record lacks any statistical disparity in light of the totality of relevant circumstances to

1  raise an inference of discriminatory purpose. See Gonzalez v Brown, 585 F.3d 1202, 1211 (9th
2  Cir. 2009) (holding that the fact that African-American jurors remain on the panel "may be
3  considered indicative of nondiscriminatory motive.").

4      An inference of discrimination may also be established through comparative juror
5  analysis. Boyd, 467 F.3d at 1147-1148. An inference of discriminatory intent may arise by
6  determining whether non-challenged jurors possess any of the characteristics on which the
7  prosecution challenged jurors in the protected group. Id. at 1147-48.

8      While the California Court of Appeal reviewed the evidence in the record and determined
9  that the record would support race-neutral grounds for the peremptory challenge, the Supreme
10 Court has held that the ultimate question is not whether the prosecutor might have had good
11 reasons to strike the juror, but rather what were the prosecutor's real reasons. Johnson, 545 U.S.
12 at 170; see also Miller-El, 545 U.S. at 252 ("A Batson challenge does not call for a mere exercise
13 in thinking up any rational basis."). Therefore, in the absence of a race-neutral reason proffered
14 by the prosecution, or the ability to infer such, the court is left with only the record of *voir dire*
15 for purposes of conducting a comparative juror analysis. Boyd, 467 F.3d 1139, 1149 ("in some
16 circumstances, a court may have to review the questions that the prosecution asked of jurors at
17 step one of the Batson analysis to determine whether a defendant has made a prima facie
18 showing of unlawful discrimination.").

19     An inference of discrimination may be found where the prosecutor asked different
20 questions of the minority prospective jurors from those asked of non-minority prospective jurors.
21 Miller-El, 545 U.S. at 263. Additionally, the fact that the prosecutor fails to "engage in
22 meaningful questioning of any of the minority jurors" may support an inference of
23 discrimination. Fernandez v. Roe, 286 F.3d 1073, 1079 (9th Cir. 2002).

24     Here, the record does not disclose which of the prospective jurors were African-
25 American or contain any evidence that would permit the court to assume with confidence which
26 jurors were African-American and which were not. Thus, the court is unable to conduct a
27 thorough comparative juror analysis. However, the record of *voir dire* on it's face fails to
28

Order Denying Petition for Writ of Habeas Corpus; Denying Certificate of Appealability
P:\PRO-SE\SJ.Rmw\HC.08\Fletcher774denyhc.wpd

provide any evidence which may raise an inference of discriminatory intent. During jury selection, the prosecutor asked Bennett several questions regarding her career as a caregiver. (Resp., 3A at 135.) He asked several other prospective jurors similar questions about their occupations. (Id. at 134-138.) The prosecutor engaged in extensive questioning only to clarify specific concerns regarding juror questionnaires or earlier questioning by the court. (Id. at 125-127, 131-134.) Thus, a limited comparative juror analysis reveals no noticeably different treatment of prospective jurors based on their race.

While the burden for making a prima facie case is "not an onerous one," here, the totality of the relevant circumstances does not give rise to an inference of discrimination. Boyd, 467 F.3d at 1151. Neither a statistical disparity nor the record of *voir dire* support an inference of purposeful discrimination. Furthermore, the petitioner fails to offer any additional evidence giving rise to such an inference. Because nothing in the record vanquishes the presumption of correctness to which the Court of Appeal is entitled, the conclusion that petitioner did not establish a prima facie case of discriminatory use of a peremptory challenge must be upheld. Tolbert, 190 F.3d at 989.

In sum, the Court of Appeal's affirmation of the trial court's conclusion that the petitioner failed to establish a prima facie case that the prosecutor excused the prospective juror on the basis of race was not an unreasonable determination of facts, nor was it contrary to or an unreasonable application of federal law. 28 U.S.C. § 2254(d).

## CONCLUSION

For the reasons set forth above, the court concludes that petitioner has failed to show a violation of her federal constitutional rights in the underlying state criminal proceedings. Accordingly, the petition for writ of habeas corpus is DENIED. The clerk shall close the file.

## CERTIFICATE OF APPEALABILITY

The federal rules governing habeas cases brought by state prisoners have been amended to require a district court that denies a habeas petition to grant or deny a certificate of

Order Denying Petition for Writ of Habeas Corpus; Denying Certificate of Appealability
P:\PRO-SE\SJ.Rmw\HC.08\Fletcher774denyhc.wpd

1 appealability ("COA") in its ruling. See Rule 11(a), Rules Governing § 2254 Cases, 28 U.S.C.
2 foll. § 2254 (effective December 1, 2009). For the reasons set out in the discussion above,
3 petitioner has not shown "that jurists of reason would find it debatable whether the petition states
4 a valid claim of the denial of a constitutional right [or] that jurists of reason would find it
5 debatable whether the district court was correct in its procedural ruling." Slack v. McDaniel,
6 529 U.S. 473, 484 (2000). Accordingly, a COA is DENIED.

IT IS SO ORDERED.

DATED: 7/30/10

*Ronald M. Whyte*
RONALD M. WHYTE
United States District Judge